**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DOUGLAS PETER SZYMANSKI,

    Petitioner - Appellant,

v.

MICHAEL MURPHY, Warden, Wyoming
State Penitentiary; WYOMING
ATTORNEY GENERAL,

    Respondents - Appellees.

No. 09-8096
(D. Wyo.)
(D.C. No. 2:09-CV-00009-CAB)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

---

A jury convicted Douglas Peter Szymanski in Wyoming state court of first degree

arson, a violation of Wyo. Stat. Ann. § 6-3-101(a)-(b). Szymanski appealed to the

Wyoming Supreme Court claiming his Sixth and Fourteenth Amendment rights were

violated due to the State's use of out-of-court statements made by an unavailable

declarant; the statements were introduced through the testimony of an expert

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id*.

witness.  The Wyoming Supreme Court affirmed, *see Szymanski v. State*, 166 P.3d 879

(Wyo. 2007), and the United States Supreme Court denied Szymanski's petition for a

writ of certiorari.  *See Szymanski v. Wyoming*, 552 U.S. 1153 (2008).  Szymanski then

filed this 28 U.S.C. § 2254 petition for writ of habeas corpus.  The district court denied

the petition but granted a certificate of appealability (COA) on both issues raised by

Szymanski:  (1) whether the Wyoming Supreme Court departed from the standards set

forth in *Crawford v. Washington*[1] and its progeny in concluding the testimonial out-of-

court statements of the unavailable witness were not admitted for the truth of the matter

asserted; and (2) whether Szymanski's confrontation and due process rights were violated

when the Wyoming Supreme Court failed to consider the effect the State's reference to

the out-of-court statements during closing argument.  We affirm.[2]

## I.     BACKGROUND

Notwithstanding Szymanski's views (which we will note as necessary), the

Wyoming Supreme Court has accurately summarized the historical facts:

> At approximately 8:30 p.m. on April 1, 2005, Tammy Johnson, a tenant in an apartment complex owned by the Casper Housing Authority located at 243 East K Street in Casper, Wyoming, was returning home.  As she approached her apartment, she noticed Mr. Szymanski, who also lived in the apartment complex and with whom she had an "on again-off again" relationship, coming toward her.  He was acting strangely and was wearing the type of latex gloves worn by volunteer firefighters.

> As Mr. Szymanski approached Ms. Johnson, he said, "Guess what? Electricity is out.  Ha ha ha."  She asked what was going on and he did not

---

[1] *Crawford v. Washington*, 541 U.S. 36 (2004).

[2] Our jurisdiction derives from 28 U.S.C. § 1291.

respond. Ms. Johnson entered her apartment, walked toward the kitchen window and saw that the apartment next to hers, in which Sharon Jones lived, was on fire. Ms. Johnson attempted to call 911 but discovered her phone was not working. She ran to the apartment of another tenant who called 911.

Worried about the fire reaching her own apartment, Ms. Johnson went back to try to retrieve some of her possessions. Mr. Szymanski followed her into her apartment. He told her she needed to get out and grabbed her arm. He became angry and hit her with the gloves he had been wearing. He said, "I'm just going to burn you. You're going to die, you f---ing, ----." He left and she heard a rapping noise on her bedroom window. She heard Mr. Szymanski outside the window saying, "Bitch, come on, bitch, you're going to die."

At approximately 8:40 p.m., the Casper Public Safety Communications Center/911 received the report of the fire. Police officers and firefighters responded. When they arrived at the scene, they determined that the fire was located in unit 241 of the apartment complex. They observed Mr. Szymanski outside the burning apartment. He appeared anxious to enter the apartment and had to be asked twice to move out of the way. One of the firefighters noticed Mr. Szymanski had a hammer sticking out of the back of his pants.

As firefighters worked to extinguish the fire, Ms. Johnson reported Mr. Szymanski's behavior to police at the scene. When the police spoke with him, he appeared to be intoxicated. They asked him to return to his apartment and he refused, becoming increasingly belligerent and uncooperative. Consequently, police arrested him for public intoxication. A struggle ensued and the officers had to use physical force in order to handcuff him and get him into the patrol car.

At the detention center, one of the officers removed a hammer from the back of Mr. Szymanski's pants and a jar of onion powder from the front of his pants. Mr. Szymanski had soot marks on his face and his clothes smelled of smoke. Small shards of glass were found on the hammer and Mr. Szymanski's clothes and shoes.

Fire Inspector Mike Magee and Police Detective Brian Street were called to investigate the cause and origin of the fire. They found a disposable lighter in the parking lot of the apartment complex next to Mr. Szymanski's car which Ms. Johnson identified as one she had seen him use to light his cigarettes. They also found a steak knife inside the doorjamb of the burned apartment which witnesses identified as identical to knives found in Mr.

Szymanski's apartment.  They concluded someone had broken the electrical meter outside the apartment, forcibly entered and ransacked Ms. Jones' apartment, leaving piles of clothing, bags, spice containers, food boxes and other combustible items strewn about on the floor and breaking several windows and a bathroom mirror, and then intentionally set fire to the piles of debris dumped in the kitchen.

*Szymanski*, 166 P.3d at 881-882; (R. Vol. I at 126-127.)

Szymanski was charged with first degree arson in violation of Wyo. Stat. Ann. § 6-3-101(a) and (b).  At trial, the State called Fire Inspector Mike Magee to offer his expert opinion as to the cause of the fire.  During redirect examination, the State asked Magee about his interview with Sharon Jones regarding the condition of her apartment prior to the fire.[3]  Over Szymanski's objection, the trial court decided Jones' statements were admissible under Rule 703 of the Wyoming Rules of Evidence (WRE 703) to explain the basis of Magee's opinion.  After a six day trial, the jury found Szymanski guilty.  The court sentenced him to 16 to 20 years in the Wyoming State Penitentiary. The Wyoming Supreme Court affirmed, concluding "[Jones'] statements were not admitted for their truth, and did not implicate Mr. Szymanski, [thus] their admission did not violate the confrontation clause." *Szymanski*, 166 P.3d at 886.  The federal district court denied Szymanski's application for writ of habeas corpus, concluding the Wyoming Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law.

---

[3] Jones passed away between the time of the fire and the start of trial.  Her cause of death was unrelated to the fire.

- 4 -

## II.     DISCUSSION

A.     Admission of Expert Testimony containing Jones' Out-of-Court Statements.

Szymanski contends his "right of confrontation was violated when the trial court permitted the introduction of testimonial out-of-court statements that were used for the truth of the matter asserted, contravening *Crawford v. Washington*, 541 U.S. 36 (2004)." (Appellant Opening Brief at 8.)  Applying the harmless error standard enunciated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), we are not convinced Szymanski is entitled to habeas relief.

On direct examination, the State asked Magee for his opinion regarding the cause of the fire.  He responded that the fire had started in the kitchen and was the product of human hand.  In explaining his conclusion, Magee related several sources of information upon which he relied, including his interview with Jones.  As his testimony unfolded the State asked about the substance of the Jones' interview; Szymanski made a hearsay and Confrontation Clause objection.  The court deferred ruling on the question until the next day.  Magee did not answer.  Relying on Rule 703 of the Wyoming Rules of Evidence (WRE 703), the trial court overruled the objection, concluding the substance of the interview was admissible to explain the basis for Magee's opinion.  Although the trial court overruled the objection, the State refrained from any further attempts to elicit such testimony from Magee on direct examination.

In an attempt to punch holes in Magee's theory regarding the source of the fire, Szymanski cross-examined him concerning the condition of the apartment before the fire. Proceeding through the door opened by Szymanski on cross-examination, the State, in its

- 5 -

redirect, then asked Magee about the substance of his interview with Jones. The

following exchange took place:

Q:      You indicated you talked to [Jones] that night [of the fire]. Was that
        before or after you had been in the apartment?

A:      That was after I was in the apartment.

                        *               *               *

Q:      Did she indicate to you the condition of the apartment before the
        fire?

A:      Yes, she did.

Q:      What did she tell you about that?

A:      She told me she was very clean.

Q:      Okay. The place was neat?

A:      Yes.

Q:      Orderly?

A:      Yes.

Q:      Was there any damage to any of the property when she left?

A:      Well, that was in my mind, and I tried to steer the conversation
        without coming out and actually asking her, and she knew of no
        damage. She said -- she told me that she had clothes in the tub, that
        should be the only thing out of order. She had some clothing in her
        bathtub.

Q:      Okay. What about the broken mirror? Did you ever specifically ask
        her about that?

A:      At the very end of the interview, I asked her.

Q:      What did she say?

A:      She said, "My mirror should not be broken." She doesn't know.

Q:      According to her, was her apartment secure when [s]he left?

A:     Yes, it was.

Q:     And she had been at her mom's [house] a day or two?

A:     She said she had been gone for a day or two from her home -- from her apartment.

Q:     And it was locked and secured when she left?

A:     I'm assuming so, yes.

Q:     Okay.  Did you specifically ask her that question?

A:     I don't recall.

Q:     But she said it was in good condition when she left?

A:     Yes.

(R. Vol. I at 170-172)  Szymanski did not renew his objection to this line of questioning.

Immediately following this testimony, however, the court instructed the jury:

> [T]he testimony about that interview from Ms. Jones is not being allowed for the truth of the matter asserted, but because it was a portion of the investigation of the officer.  And for that limited purpose alone, I've allowed it to come in.

(*Id.* at 172-173.)

"In an appeal of the dismissal of a federal habeas corpus petition, we review a district court's findings of fact for clear error and its conclusions of law de novo." *Robinson v. Golder*, 443 F.3d 718, 720 (10th Cir. 2006) (quotations omitted).  Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1986 (AEDPA), a federal court should not grant habeas relief to a state prisoner unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

- 7 -

We have explained:

> A state court unreasonably applies federal law when it (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts, or (2) either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Parker v. Scott*, 394 F.3d 1302, 1308 (10th Cir. 2005) (quotations omitted).

The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The protections of this clause apply in both federal and state prosecutions. *See Crawford*, 541 U.S. at 42. In *Crawford*, the Court explained the "primary object" of the Confrontation Clause is "testimonial hearsay." *Id.* at 53; *see Davis v. Washington*, 547 U.S. 813 (2006) (revisiting *Crawford* and elaborating on "testimonial statements"). "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68.

The parties agree the statements Jones made to Magee regarding the condition of her apartment before the fire were testimonial. They also agree Jones was not available to testify at trial and her out-of-court statements were not subject to cross-examination. The question is whether the statements are hearsay. If not, Szymanski suffered no constitutional violation. *Id.*, 541 U.S. at 59 n.9 ("The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); *see also Tennessee v. Street*, 471 U.S. 409, 414 (1985) ("The

*nonhearsay* aspect of [the accomplice's] confession—not to prove what happened at the murder scene but to prove what happened when [the defendant] confessed—raises no Confrontation Clause concerns.").

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The trial court admitted Jones' statements, not to prove the truth of the matter asserted, but as part of the basis for Magee's conclusion regarding the cause of the fire. The Wyoming Supreme Court agreed the statements were admissible as non-hearsay under WRE 703. Szymanski contends this represents an unreasonable application of *Crawford v. Washington* because WRE 703 "does not classify evidence introduced as the basis for an expert's opinion as non-hearsay." (Appellant's Opening Br. at 12.) He argues: "[E]vidence admitted under [Wyoming Rule] 703 as the basis for an expert's opinion is, necessarily, offered for the truth of the matters asserted" because "the expert's opinion depends upon the jury believing that it is based upon information that is true." (*Id.*) According to Szymanski, the government "intended" Jones' statements "to prove the truth of the matter asserted—that the apartment was neat when Ms. Jones left it, so someone else started the fire." (*Id*. at 10.)

WRE 703 does not make the facts or data underlying an expert's opinion admissible; it simply permits an expert to rely on information that might not be admissible at trial.[4] Rule 703 of the Federal Rules of Evidence (FRE 703), on the other

_____

[4] WRE 703 states:

- 9 -

hand, specifically deals with the issue of disclosing inadmissible matters to the jury. It specifically requires the trial court to conduct a balancing test before permitting an expert to relate such facts or data underlying his opinion. FRE 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. ***Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.***

(Emphasis added). The rule was amended in 2000 "to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted." Fed. R. Evid. 703 advisory committee notes. Thus, under FRE 703, it would have been proper for the court to allow Magee to testify to Jones' statements (assuming they are inadmissible) only if it first determined the probative value of the statements substantially outweighed their prejudicial effect. The Wyoming trial court was not required to (and did not) undertake this balancing analysis.

Szymanski argues WRE 703 "should not be viewed as a vehicle in which uncross-examined testimonial statements are imported into a trial circumventing the commands of

---

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

the Sixth Amendment." (Appellant's Reply Br. at 7.) A leading treatise on Federal

Evidence recognizes this risk:

> [O]veruse and misuse of source material in [the FRE 703] setting raises confrontation concerns, and both the expert testimony provisions and the confrontation clause reinforce the message that experts are not to be used as conduits in criminal cases for out-of-court statements that incriminate defendants . . . . [I]t seems that a nonhearsay use for a testimonial statement should not overcome an objection under *Crawford* if the statement is likely to be misused as proof of what it asserts.

Christopher B. Mueller & Laird C. Kirkpatrick, FEDERAL EVIDENCE § 8.27 (3d ed.

2007).[5]

---

[5] Szymanski points to two unpublished federal district court decisions in support of his position. *See United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-240, 2007 WL 2059722 (N.D. Tex. July 16, 2007) (unpublished); *United States v. Hernandez-Mejia*, No. 05-0469, 2007 WL 2219411 (D. N.M. April 30, 2007) (unpublished). In *Holy Land Foundation*, the defendants filed a motion "to exclude the government's proposed experts or, in the alternative, for a hearing under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)." 2007 WL 2059722 at *1. The defendants argued, *inter alia*, the admission of one expert's opinion testimony would violate the Confrontation Clause "because some of the hearsay statements upon which he relies are the product of police interrogation." *Id.* at *6. The district court partially agreed, explaining:

> To the extent that [the expert's] opinion may be a mere recitation of testimonial hearsay statements, allowing such testimony would constitute a violation of the Confrontation Clause. That is, to allow [the expert] to transmit to the jury otherwise inadmissible testimonial hearsay under the guise of expert testimony would deprive the defendants of their right to confront and cross-examine the out-of-court speakers.

*Id.* at *7.

In *Hernanez-Mejia*, the defendants filed a motion in limine to exclude the expert testimony of two case agents which was "based partially on knowledge the agents gained from testimonial statements that others made." 2007 WL 2219411 at *1. The court recognized "[a]n expert should not be a conduit for getting into evidence testimonial statements that *Crawford v. Washington* would otherwise prohibit." *Id.* at *11. It held:

- 11 -

The differences between FRE 703 and WRE 703 give us pause in considering the confrontation issue.  However, we need not determine whether *Crawford* was unreasonably applied because even if we were to think so, Szymanski would be entitled to relief only if he can show prejudice.  *See Douglas v. Workman*, 560 F.3d 1156, 1171 (10th Cir. 2009).  Unless the error is a structural defect, which Szymanski does not contend, we apply the harmless error standard enunciated in *Brecht v. Abrahamson*.  *See id*.  Under this standard:

> [H]abeas relief is proper only if the error had a substantial and injurious effect or influence in determining the jury's verdict.  A substantial and injurious effect exists when the court holds at least a grave doubt about the effect of the error on the jury's verdict.  Grave doubt exists when, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.

*Id.* (quotations and citations omitted).

Assuming error, we have little concern (let alone grave doubt) about its prejudicial effect on the verdict.  For starters, immediately after Magee's testimony, the court instructed the jury: "[T]he testimony about that interview from Ms. Jones is not being allowed for the truth of the matter asserted, but because it was a portion of the

---

The United States cannot dress evidence in the veil of expert testimony to avoid restrictions that the Confrontation Clause imposes in a criminal trial. To the extent that [one of the expert's] opinions fall within this latter category, the Court believes that the opinions are inadmissible, and will preclude his testimony from the trial.

*Id.* at *12.

While not authoritative sources, the reasoning of these cases lends support to Szymanski's argument.  However, as we explain, they do not help him show prejudice.

- 12 -

investigation of the officer. And for that limited purpose alone, I've allowed it to come in." (R. Vol. I at 173). As this Court has explained on numerous occasions, "[w]e presume jurors will conscientiously follow the trial court's instructions." *United States v. Cardinas Garcia*, 596 F.3d 788, 798 (10th Cir.) (quotations omitted), *cert. denied*, 130 S. Ct. 3229 (2010). Szymanski gives us no reason to depart from that presumption.

Szymanski contends he suffered prejudice because Jones' statements "[were] key to establishing the basis of Magee's conclusion" regarding the origin of the fire. (Appellant's Opening Br. at 15.) "Unless the jury believed Jones' statement[s], it could not conclude that the fire resulted from arson caused by Mr. Szymanski, as opposed to Jones' own negligence." (*Id.*) His argument is tenuous for two reasons. First, Jones' statements were not the only evidence regarding the condition of her apartment before the fire. Patrick Kernan, the Director of Operations for the Casper Housing Authority, had examined Jones' apartment the day before the fire and testified "that he did not recall piles of clothes or other items on the floor of the apartment and that nothing obstructed his ability to walk around the apartment." *Szymanski*, 166 P.3d at 890; (R. Vol. I at 141.) Additionally, "[h]e testified the apartment was not cluttered and there were no piles of debris in the kitchen when he inspected it the day before the fire." *Id.* The independent evidence makes it unlikely that the jury relied on Jones' purported statements regarding the condition of her apartment.

Second, the testimony regarding the state of Jones' apartment — from both Magee and Kernan — was not the only evidence of Szymanski's guilt. For instance, immediately after the fire, Szymanski "was acting strangely and was wearing the type of

latex gloves worn by volunteer firefighters."[6] *Szymanski,* 166 P.3d at 881. A hammer was removed from his pants after being taken to the detention center. Small shards of glass were found on the hammer, Szymanski's clothes and his shoes. Szymanski also "had soot marks on his face and his clothes smelled of smoke." *Id.* at 882. Officers "found a disposable lighter in the parking lot of the apartment complex next to Mr. Szymanski's car which [a neighbor] identified as one she had seen him use to light his cigarettes." *Id.* Authorities also found a steak knife inside the doorjamb of the burned apartment which witnesses identified as identical to knives found in Szymanski's apartment. While this evidence is circumstantial, it strongly suggests the jury did not rest its decision on the secondhand account of Jones' statements.

We see no substantial and injurious effect on the verdict from McGee's testimony.

B.    Prosecutor's Reference to Ms. Jones's Out-of-Court Statements in Closing Argument

In closing argument, the prosecutor told the jury (without objection) "we know the condition of the apartment because Patrick Kearnan was there the day before, and Sharon

---

[6] Even when the fire was ablaze, Szymanski's actions were peculiar. One of the tenants, Ms. Johnson, was concerned about the fire reaching her own apartment and went back in to apparently salvage some of her belongings.

> Mr. Szymanski followed her into her apartment. He told her she needed to get out and grabbed her arm. He became angry and hit her with the gloves he had been wearing. He said, "I'm just going to burn you. You're going to die, you f---ing, ----." He left and she heard a rapping noise on her bedroom window. She heard Mr. Szymanski outside the window saying, "Bitch, come on, bitch, you're going to die."

*Szymanski*, 166 P.3d at 881.

Jones had talked about the state of the apartment." (R. Vol. I at 186.) Szymanski contends his right to due process was violated by the prosecutor's misconduct in making reference to Jones' out-of-court statements.

The Wyoming Supreme Court recognized the impropriety of the prosecutor's suggestion. However, it ultimately concluded that "[i]n the context of the entire argument and the record, the fact that the prosecutor also mentioned Ms. Jones' statements as proving that the apartment was debris-free did not result in material prejudice."[7] *Szymanski*, 166 P.3d at 891. We agree. Although "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding," *United States v. Young*, 470 U.S. 1, 11 (1985), habeas relief may be proper when a prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Douglas*, 560 F.3d at 1177 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Szymanski argues "[t]he prosecutor's decision here to flout the Confrontation Clause and flout the trial court's limiting instruction regarding Jones' statements was sufficiently prejudicial as a due process violation." (Appellant's Opening Br. at 19.) However, we do not "parse the prosecutor's argument word by word in a vacuum . . . ." *Paxton*, 199 F.3d at 1217. Instead, we examine the entire proceedings, including

---

[7] The Wyoming Supreme Court reasoned the argument did not materially prejudice Szymanski because other evidence, specifically Patrick Kernan's testimony, supported the State's argument regarding the condition of the apartment. *Szymanski*, 166 P.3d at 890-891.

- 15 -

consideration of instructions to the jury by the court to counteract improper remarks and counsel's failure to object to such remarks. *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002). "Ultimately, we must consider the probable effect the prosecutor's statements would have on the jury's ability to judge the evidence fairly." *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998) (quotations omitted).

The Wyoming Supreme Court's finding that the prosecutor's isolated statement did not result in material prejudice seems unassailable, certainly it is not contrary to federal law. Considering all the surrounding circumstances, *see Patton v. Mullin*, 425 F.3d 788, 811 (10th Cir. 2005), the State's case, even without the subject remarks, was strong. The improper statement is unlikely to have had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht*, 507 U.S. at 623.

**AFFIRMED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge