2011 WY 63

**Alexis MAJORS, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–10–0157.

Supreme Court of Wyoming.

April 13, 2011.

Representing Appellant: Diane Lozano, State Public Defender, PDP; Tina Kerin, Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Justin A. Daraie, Assistant Attorney General. Argument by Mr. Daraie.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] Ms. Majors was convicted after a jury trial of misdemeanor possession of marijuana and felony possession of ecstasy. On appeal, she claims the district court erred when it denied her motion for a mistrial which was based upon the mid-trial discovery that the bailiff had been a member of the investigative team, admitted a recording of a drug transaction between a confidential informant and Ms. Majors' mother and denied her motion for sanctions based upon law enforcement's failure to collect as evidence a bottle which was shown in the prosecution photos. We conclude that the district court's rulings were appropriate except as to the recording. The recording was inadmissible hearsay and the district court's erroneous admission of the recording was prejudicial with respect to the ecstasy charge. Consequently, we reverse Ms. Majors' ecstasy possession conviction and affirm her marijuana possession conviction.

## ISSUES

[¶ 2] Ms. Majors presents the following issues on appeal:

I. Did the trial court err by allowing a sheriff's deputy who participated in the investigation of the case at bar to act as the court's bailiff and take charge of the jury and then further err by denying Ms. Major's motion for a mistrial, thereby denying her due process of law?

II. Did the trial court err by admitting a recording containing hearsay statements from a third party allegedly implicating Alexis Majors in the delivery of controlled substances despite the fact that those statements did not fall within any recognized exceptions to the prohibitions against admitting hearsay evidence?

III. Did the trial court err in refusing to grant Ms. Majors' motion for sanctions against the State of Wyoming for not preserving possible exculpatory evidence and not disclosing the exist[e]nce of the same?

Although phrased differently, the State articulates the same issues.

## FACTS

[¶ 3] Ms. Majors was a University of Wyoming student residing in Laramie, Wyoming at the time of the events at issue in this case. On April 30, 2009, a confidential informant purchased marijuana from Ms. Majors' mother, Danelle Smith, in a controlled buy in Worland, Wyoming. The transaction was audio recorded by the Washakie County Sheriff's Department. The confidential informant also asked Ms. Smith about obtaining some ecstasy. Ms. Smith stated that she did not have any but that "Lex" could bring some next time she came back.

[¶ 4] The sheriff's department executed a no-knock search warrant on Ms. Smith's house on May 3, 2009. When the officers entered the house, Ms. Majors was sitting on the couch near a black bag. The black bag held various drug related paraphernalia, including a glass bottle containing marijuana, a plastic "prescription" bottle containing ecsta-

sy tablets and money used during the controlled buy from Ms. Smith on April 30th. More controlled substances were located in other areas of the house, including Ms. Smith's bedroom.

[¶ 5] The State charged Ms. Majors with one count of unlawful possession with intent to deliver marijuana and one count of unlawful possession with intent to deliver ecstasy, both in violation of Wyo. Stat. Ann. § 35–7–1031(a) (LexisNexis 2009).[1] The district court conducted a jury trial. During the second day of trial, the district court discovered that a sheriff's deputy who had helped with the search of Ms. Smith's home was acting as the trial bailiff. Ms. Majors moved for a mistrial, claiming a violation of her right to a fair trial. The district court denied her mistrial motion, but appointed a different officer to act as bailiff for the remainder of the trial. The district court also denied Ms. Majors' motion for sanctions based upon the State's failure to collect a pill bottle which was shown in the photographs of the contents of the black bag. As part of its case in chief, the State was allowed to play, over defense objection, the audio recording of the controlled buy between Ms. Smith and the confidential informant.

[¶ 6] At the conclusion of the trial, the jury acquitted Ms. Majors of the delivery charges but convicted her of the lesser included charges of possession. The marijuana possession charge was a misdemeanor, but the ecstasy possession charge was a felony. Ms. Majors appealed.

## DISCUSSION

### A. Bailiff as Witness

[¶ 7] Deputy Al Nelson was involved in the search of Ms. Smith's home as the K–9 (drug dog) handler. He apparently was not initially listed as a witness for either the State or the defendant. At the beginning of the trial, the district court appointed Deputy Nelson as the trial bailiff. As part of his duties, he gathered the jury notebooks, conducted the jury back and forth between the courtroom and the jury room during breaks, etc.

[¶ 8] During the second day of trial, one of the other investigating officers mentioned that Deputy Nelson and his drug dog were involved in the search of Ms. Smith's residence. The district court judge called the attorneys into chambers, but those proceedings were not reported. Upon returning to the courtroom, the district court told the jury:

> For the record, we took a break. The Court became cognizant of the fact that . . . our Bailiff is the drug dog guy, okay. So I need to replace the Bailiff for the remainder of the trial.

[¶ 9] After another break, defense counsel moved for a mistrial because the bailiff participated in the search and was a potential witness. When asked if the defense intended to call Deputy Nelson as a witness, defense counsel stated that it may be necessary because the primary investigating officer could not testify as to whether the dog alerted on the black bag or Ms. Majors' other property. The district court denied the mistrial motion, stating that counsel should have known about Deputy Nelson's involvement from the police reports. The judge stated that he would simply replace the bailiff.

[¶ 10] Defense counsel called Deputy Nelson as a witness. He testified that he participated in the search of Ms. Smith's residence on May 3, 2009, stating he "deployed [his] K–9 for a K–9 sniff of that residence." On direct examination, Deputy Nelson testified that the dog alerted to a bedroom dresser and the black bag. He further stated that the dog did not alert to anything else in the residence, including any backpacks, suitcases or luggage, or to any of the vehicles at the residence.

[¶ 11] Ms. Majors claims the district court erred by denying her mistrial motion. We review a district court's denial of a motion for a mistrial by applying the abuse of discretion standard. *Thomas v. State*, 2006 WY 34, ¶ 10, 131 P.3d 348, 352 (Wyo.2006).

---

1. Section 35–7–1031(a) states in relevant part: "Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."

A district court "abuses its discretion when it could not have reasonably concluded as it did." *Id.,* citing *Gunnett v. State,* 2005 WY 8, ¶ 15, 104 P.3d 775, 779 (Wyo.2005).

[¶ 12] Advancing her argument that the district court should have granted her motion for a mistrial, Ms. Majors cites to two primary cases—*Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) and *Romo v. State,* 500 P.2d 678 (Wyo.1972). In *Turner,* the United States Supreme Court reversed the defendant's capital conviction, concluding he was denied the right to a fair trial by an impartial jury because the trial court placed two sheriff's deputies, who were also the key prosecution witnesses, in charge of the jury during the trial. The deputies had freely mingled and conversed with the jury while the jury was sequestered during the trial. *Id.* at 467–68, 85 S.Ct. at 547. The Supreme Court stated:

> In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the "evidence developed" against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel. What happened in this case operated to subvert these basic guarantees of trial by jury. It is to be emphasized that the testimony of [the two deputies] was not confined to some uncontroverted or merely formal aspect of the case for the prosecution. On the contrary, the credibility which the jury attached to the testimony of these two key witnesses must inevitably have determined whether Wayne Turner was to be sent to his death. To be sure, their credibility was assailed by Turner's counsel through cross-examination in open court. But the potentialities of what went on outside the courtroom during the three days of the trial may well have made these courtroom proceedings little more than a hollow formality.
>
> It is true that at the time they testified in open court [the deputies] told the trial judge that they had not talked to the jurors about the case itself. But there is nothing to show what the two deputies discussed in their conversations with the jurors thereafter. And even if it could be assumed that the deputies never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution. We deal here not with a brief encounter, but with a continuous and intimate association throughout a three-day trial. . . .

*Id.* at 472–73, 85 S.Ct. at 550 (footnotes and citations omitted). *See also, Gonzales v. Beto,* 405 U.S. 1052, 92 S.Ct. 1503, 31 L.Ed.2d 787 (1972) (reversing the defendant's conviction because a county sheriff, who was the prosecution's key witness, served as bailiff).

[¶ 13] In *Romo,* 500 P.2d at 680–82, we reversed the defendant's conviction on a second degree murder charge because three jurors had lunch with two police officers, one of whom was a principal witness in the case. Although the officers testified that they did not discuss the case with the jurors, we held the communication was improper and rebuttably presumed to be prejudicial. We noted that reversal was required because "the witness who commingled with the jury was a police officer and also a principal witness for the prosecution, and therefore, a part of the prosecution team." *Id.* at 682.

[¶ 14] Applying these principles to the case at bar, we conclude that it was improper for an officer who participated in the investigation to act as bailiff at the trial. Although the district court placed the blame for allowing Deputy Nelson to be appointed as bailiff on counsel, it was the judge's responsibility to make sure that such a situation did not occur. Judges are required to supervise their staffs and make sure they follow the Code of Judicial Conduct. Code of Judicial Conduct, Rule 2.12. Rules 2.11(A)(1) and 2.12 of the Code of Judicial Conduct mandate disqualification of a judge, or any member of his staff, when "he has personal knowledge of facts that are in dispute in the proceeding." Because he had participated in the investigation, Deputy Nelson had personal knowledge of the facts in dispute and

should have been disqualified from acting as bailiff in this case.

■ [¶ 15] Although we have concluded that the appointment of one of the investigating officers as bailiff was erroneous, in resolving whether the district court abused its discretion by denying the motion for a mistrial, we must determine whether it reasonably could have concluded that Ms. Majors was not denied her constitutional right to due process and a fair trial by an impartial jury. In undertaking that analysis, we must consider the potential for prejudice. *See State v. Ford*, 306 Wis.2d 1, 742 N.W.2d 61, 63 (2007) (stating that any error in allowing a witness to serve as bailiff must be shown to be prejudicial to mandate reversal).

[¶ 16] Unlike the officers in *Turner* and *Romo*, Deputy Nelson was not a principal witness in the case. In fact, he apparently was not even initially listed as a possible witness by either side. It was not until the primary investigating officer could not answer certain questions about the drug dog alerts that Deputy Nelson's testimony was determined to be necessary by the defense. Moreover, Deputy Nelson's testimony was not particularly critical and was, in fact, helpful to the defense because he testified that the dog did not alert on any of Ms. Majors' other belongings (except the black bag, which the other officers had already discussed) or her car.

[¶ 17] The record does not contain any specific information about the nature of the communication between Deputy Nelson and the jury. We do know that, according to the district court, Deputy Nelson performed the typical duties of a bailiff. The judge explained:

I will note for the record that we have gone through one day of trial, we're into the second day of trial, and Mr. Nelson did—was present at the time of jury selection, he did take charge of the jury after his oath and after the jury was seated after the break following the selection of the jury. Also that there is one, one break mid-morning and then following that break for the lunchtime, and Bailiff Nelson did make sure that the—he collected the jury notebooks and that sort of thing.

[¶ 18] There is absolutely no evidence in the record that Deputy Nelson did anything as bailiff other than the routine, administrative matters he was charged with performing. W.R.Cr.P. 24.1(a) makes the bailiff responsible for collecting jury notebooks, and Wyo. Stat. Ann. § 1–11–201 (LexisNexis 2009) states that the court will place the jury in the custody of the appropriate officer. Wyo. Stat. Ann. § 1–11–207 (LexisNexis 2009) provides specific directions to the bailiff about communicating with the jury: "The officer having [the jury] under his charge shall not allow any communication to be made to them nor make any himself except to ask them if they have agreed upon their verdict, unless by order of the court." We assume, for the purposes of this case, that Deputy Nelson communicated with the jury to the extent permitted by law.

[¶ 19] In many respects, this case is like *Ford*, 742 N.W.2d 61. In that case, the victim was working as a convenience store clerk when the defendant assaulted him. At trial, the victim was asked who recommended that he contact the police after the assault and he "responded by pointing to the bailiff." The defendant moved for a mistrial, arguing the bailiff could be an important defense witness. The court denied the motion for a mistrial because there was no indication that the bailiff had any improper communication with the jury and he was not listed as a State witness. The court did, however, appoint a different bailiff for the reminder of the trial. *Id.* at 64.

[¶ 20] The Wisconsin Supreme Court concluded that the district court did not abuse its discretion by denying the defendant's motion for a mistrial. *Id.* at 72. The court emphasized that the bailiff was not a witness in the case and there was no showing of close or improper contact between the jury and the bailiff. *Id.* at 69–70. While there is a distinction between *Ford* and the case at bar, in that Deputy Nelson did help investigate the crime and ended up testifying on a minor element of the case, we believe that the circumstances are sufficiently similar to justify applying *Ford*'s rationale to the case at bar.

[¶ 21] We cannot say that Ms. Majors was prejudiced by the admittedly unorthodox procedures employed here. Deputy Nelson was not a key witness and there is no indication of any improper contacts between him and jury. Consequently, the district court did not abuse its discretion by denying Ms. Majors' motion for a mistrial.

### B. Audio Tape/Hearsay

[¶ 22] As described in the statement of facts, law enforcement audio recorded the April 30, 2009, drug transaction between Ms. Smith and the confidential informant. At trial, the State moved for admission of the recording during the confidential informant's testimony. Ms. Majors objected to the recording as hearsay, and the prosecution responded: "It's not hearsay, it's the actual conversation and it's the best evidence of the conversation."

[¶ 23] The district court allowed the recording to be played, although it indicated that it was only allowing counsel to "proceed with the identification" of it. Later, the court officially admitted the recording into evidence. The recording included conversations between law enforcement and the confidential informant and a conversation between the confidential informant and Ms. Smith. The recording was very difficult to understand in places; consequently, the confidential informant was asked to explain various parts of the recording at trial. She stated that Ms. Smith gave her two bags of marijuana and she then asked about obtaining some ecstasy. We are unable to understand the recording, but the confidential informant was allowed to testify that Ms. Smith said that "Lex," who she identified as Ms. Majors, had

a "whole bunch" of ecstasy. Ms. Smith stated that she would tell "Lex" to bring some back with her. Defense counsel objected to the confidential informant's interpretation of Ms. Smith's statements, but the district court allowed it.

[¶ 24] On appeal, Ms. Majors claims the district court erred by allowing the hearsay testimony contained in the recording to be admitted into evidence at trial. The State asserts that the evidence was properly admitted because: 1) it was not hearsay; or 2) even if it was hearsay, it was admissible under the state of mind exception to the rule.[2] The district court's decision as to the admissibility of evidence is reviewed for abuse of discretion.[3] *Szymanski v. State,* 2007 WY 139, ¶ 15, 166 P.3d 879, 883 (Wyo. 2007). A district court abuses its discretion if it could not have reasonably concluded as it did. "In this context, 'reasonably' means sound judgment exercised with regard to what is right under the circumstances and without being arbitrary or capricious.'" *Id.*

[¶ 25] Hearsay is not admissible except as specifically provided by court rule or statute. W.R.E. 802. W.R.E. 801 defines hearsay as:

(c) Hearsay.—"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

The recorded statements at issue here were made outside of court and, therefore, qualify under the basic definition of hearsay. W.R.E. 801(c).

---

2. The State also argues that Ms. Majors' right of confrontation under the Sixth Amendment to the United States Constitution was not violated because the statements were not "testimonial" under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Although Confrontation Clause and hearsay arguments overlap, we have recognized that they are distinct concepts. *Bush v. State,* 2008 WY 108, ¶¶ 27–29, 193 P.3d 203, 210 (Wyo.2008). Ms. Majors references Confrontation Clause principles, but the thrust of her argument is that the evidence was non-admissible hearsay. We conclude the hearsay analysis is dispositive and, therefore, will not provide a separate Confrontation Clause analysis.

3. The State suggests that Ms. Majors' hearsay objection was not sufficient because she did not renew it when the recording was officially entered into evidence. We will apply the abuse of discretion standard under these circumstances because the hearsay objection was clearly made and the district court's procedure in determining the admissibility of the evidence was somewhat unusual. However, we note that the result would be the same under the plain error standard of review.

[¶ 26] The State argues, however, that the statements were not hearsay because they were only elicited for the purpose of providing context to the later search and not for the truth of the matter asserted, i.e., that Ms. Majors had a "whole bunch" of ecstasy and would bring the drugs "back" with her. In *Schreibvogel v. State*, 2010 WY 45, ¶ 28, 228 P.3d 874, 884 (Wyo.2010), we discussed statements that are admitted for a non-hearsay purpose:

> If the testimony was elicited in an effort to provide context for the officer's investigation, rather than for the truth of the matter asserted, it is admissible for a limited purpose. *Olson v. State*, 698 P.2d 107, 114 (Wyo.1985). In such a situation, a limiting instruction would be appropriate if requested by the defendant.

[¶ 27] The State's argument that the statements were not admitted for the truth of the matter asserted is belied by the prosecutor's closing argument. After replaying the recorded statement for the jury during closing argument, the prosecutor stated:

> You don't have to believe [the confidential informant], but just listen to that tape and hear Ms. Smith say, "We're out, we are definitely out, Lex can get some of that, Lex has a lot of that." Listen to it. You guys have to decide on that. But that's the government's case.

The prosecutor continued:

> Did Miss Majors possess the drugs with the intent to deliver? Did Miss Majors have anything at all to do with those? First we go back to the tape, "we" this, and "we" that, "Lex has a lot of that, Lex can bring those.["] ... and [after a few days] lo and behold we come into the house and there's all the marijuana and here is all the Ecstasy, just as Mama promised.

There is simply no question that the prosecution intended to use Ms. Smith's statements to prove that Ms. Majors supplied her with illegal drugs. The State clearly indicated that the recorded statement was substantive evidence of Ms. Major's possession of the controlled substances and her intent to deliver them. Thus, the statements were hearsay and were not admissible unless they fell within an exception to the hearsay rule.

[¶ 28] The State argues that the statements were admissible as evidence of Ms. Smith's present state of mind under W.R.E. 803(3):

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (3) Then–Existing Mental, Emotional, or Physical Condition.—A statement of the declarant's then-existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health). . . .

The exception is generally used when a non-party declarant's (often the victim's) state of mind is relevant. For example, in *Humphrey v. State*, 2008 WY 67, ¶¶ 49–50, 185 P.3d 1236, 1250 (Wyo.2008), we ruled that testimony about the victim's statement that he was angry with the defendant fell within the existing state of mind exception because the defendant's knowledge of the victim's state of mind may have affected the defendant's actions.

[¶ 29] The problem with the State's argument regarding the Rule 803(3) exception in the present case is the same as the problem with its argument that the evidence was not hearsay—the record clearly shows that the prosecution was not seeking admission of the evidence simply to show the declarant's (Ms. Smith's) state of mind; the State fully intended that the evidence be viewed by the jury as substantive evidence of Ms. Majors' delivery of illegal drugs. We, therefore, conclude that the evidence was hearsay, it was not admissible because it did not fall within any recognized exception and the district court erred by admitting it.

[¶ 30] However, our inquiry does not end there. Reversal is required only if the error prejudiced the defendant. *See Miller v. State*, 2003 WY 55, ¶ 15, 67 P.3d 1191, 1195 (Wyo.2003). We must determine, therefore, whether the error affected any of Ms. Majors' substantial rights or whether the error was harmless. W.R.A.P. 9.04; W.R.Cr.P. 52.

The error is harmful if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had never occurred. To demonstrate harmful error, [the defendant] must prove prejudice under "circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play."

*Martin v. State*, 2007 WY 76, ¶ 21, 157 P.3d 923, 928 (Wyo.2007) (citations omitted).

█ [¶ 31] Ms. Majors was convicted of possession of marijuana and possession of ecstasy. We cannot say that the error in admitting Ms. Smith's hearsay statements prejudiced Ms. Majors with regard to the marijuana charge because Ms. Smith's statements did not specifically relate the marijuana to Ms. Majors. Moreover, other trial evidence directly implicated Ms. Majors in the marijuana possession charge. Her fingerprint was found on the glass container containing marijuana. With that evidence in the record, we cannot say that the verdict on the marijuana charge might have been more favorable to her had the district court not erred by admitting Ms. Smith's hearsay statements.

█ [¶ 32] The ecstasy conviction is another matter. Ms. Majors' fingerprints were not found on the bottle containing the ecstasy tablets. Besides Ms. Smith's inadmissible statements that "Lex" had a whole bunch of ecstasy and would bring some back with her, the only other evidence linking Ms. Majors to the ecstasy was the ecstasy pill bottle found in the bag next to her on the couch. The bag contained items connected with both Ms. Majors (the marijuana bottle) and Ms. Smith (the controlled buy funds). Other evidence admitted at trial demonstrated that illegal drugs were found throughout Ms. Smith's house. In light of the entirety of the trial evidence, we conclude there is a reasonable probability the jury may have acquitted Ms. Majors on the ecstasy possession charge had the improper evidence not been admitted. Under these circumstances, we conclude the circumstances manifest inherent unfairness and injustice. *Martin*, ¶ 21, 157 P.3d at 928. We, therefore, reverse her conviction for possession of the ecstasy.

## C. Sanctions/Spoliation of Evidence

█ [¶ 33] On the second day of trial, Ms. Majors filed a motion for sanctions based upon the State's failure to provide the defense with access to a blue-green bottle shown in photos of the contents of the black bag. She sought dismissal of the charges and/or suppression of all evidence connected with the black bag. In a hearing held outside the jury's presence, Ms. Majors argued that she became aware of the bottle during the trial when reviewing the State's "blown up" color photographs showing the contents of the bag. She stated that she had not been able to see it before because the copies of the photographs provided by the State prior to trial were small and in black and white. She further stated it appeared from the photographs that there was something in the bottle. The defense argued the bottle was potentially exculpatory because it could have had a label with someone else's name on it or contained another person's fingerprints.

█ The prosecutor responded that the bottle was not collected during the search. The chief investigating officer testified at the hearing and stated that he did not recall the blue pill bottle. He stated, "[m]y focus was more on any kind of drug paraphernalia identification, anything that would relate to our case at the time." He also stated that he did not "deliberately leave anything out." The district court denied the motion for sanctions, stating the defense had not demonstrated that "there's clearly exculpatory evidence within the purse, the bottle, or otherwise." The court stated, however, that it would

> allow fair comment on the contents of the photographs and the failure to collect or disclose the evidence contained within the purse, that this is not a complete inventory of what was in the purse, and fair comment would be that this was not completely done as an inventory.

█ [¶ 35] Ms. Majors claims that the district court erred by denying her motion for sanctions against the State. A district court generally has discretion in determining whether sanctions should be granted for an alleged violation of discovery responsi-

bilities. *State v. Naple*, 2006 WY 125, ¶ 8, 143 P.3d 358, 360–61 (Wyo.2006). However, because Ms. Majors asserts her right to due process was violated when the State failed to collect or preserve the evidence, our review is *de novo*. *Grady v. State*, 2008 WY 144, ¶ 29, 197 P.3d 722, 732 (Wyo.2008), citing *Wilkening v. State*, 2007 WY 187, ¶ 6, 172 P.3d 385, 386 (Wyo.2007).

[¶ 36] We discussed the State's obligation to preserve and disclose potentially exculpatory evidence in *Grady*. The victim's husband had found a letter in her jewelry box after her death. The letter was reportedly written by the victim's former boyfriend ten to fifteen years before the victim was murdered. The State Crime Lab examined the letter and determined it was not written by the defendant. The State thereafter "misplaced" the letter and it could not be examined by the defendant. *Grady*, ¶¶ 25–27, 197 P.3d at 730–31.

[¶ 37] Following the United States Supreme Court decisions in *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) and *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), we rejected Grady's claim that the State violated his due process rights by failing to preserve the letter and provide it to him.

> In *California v. Trombetta*, the United States Supreme Court held that the Due Process Clause does not require law enforcement agencies to preserve breath samples in order to introduce the results of breath-analysis tests at trial. *Trombetta*, 467 U.S. at 491, 104 S.Ct. at 2535. In doing so, the Court noted the officers were acting in good faith and in accord with their normal practice. *Id.* at 488, 104 S.Ct. at 2533. The Court concluded that whatever duty the Due Process Clause imposes on the government to preserve evidence, it is "limited to evidence that might be expected to play a significant role in the suspect's defense." *Id.* at 488, 104 S.Ct. at 2534. Under *Trombetta*, the government violates due process when it destroys evidence (1) whose exculpatory value is apparent before its destruction and (2) is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. at 2534.
>
> In *Arizona v. Youngblood*, the Supreme Court extended *Trombetta*, holding that where the government fails to preserve "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," no due process violation occurs unless the defendant demonstrates the government acted in bad faith. *Youngblood*, 488 U.S. at 57, 109 S.Ct. at 337. To establish a due process violation under *Youngblood* based on the government's failure to preserve evidence, the defendant must show (1) the evidence was "potentially useful" and (2) the government acted in bad faith. *Id.* at 58, 109 S.Ct. at 337. The inquiry into bad faith "must necessarily turn on the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 56 n. *, 109 S.Ct. at 336 n. *.

*Grady*, ¶¶ 30–31, 197 P.3d at 732.

[¶ 38] Using the *Youngblood* analysis, we must consider whether Ms. Majors made a showing that the blue bottle was potentially useful evidence and the State acted in bad faith by failing to preserve the bottle. Ms. Majors suggests that the State's actions in failing to collect the bottle prevented her from showing that the evidence was potentially useful. She argues, nevertheless, that the evidence would have been potentially useful if it contained evidence identifying it as belonging to Ms. Smith, such as fingerprints or a label. Even if we accept that the bottle may have contained such evidence, we do not know how useful that would have been to Ms. Majors. It was already established that there was money in the bag which had originally been given by the confidential informant to Ms. Smith during the controlled buy. There was clearly a relationship between the items in the bag and both Ms. Smith and Ms. Majors. Moreover, the damning evidence of Ms. Major's fingerprint on the marijuana bottle would not have been discounted regardless of the attributes of the blue bottle.

[¶ 39] Ms. Majors' efforts to establish the second element of the *Youngblood* analysis are even more inadequate. There is absolutely no evidence that the officers had any idea of the exculpatory value of the bottle or had a nefarious intent when they failed to collect it. In *Youngblood*, 488 U.S. at 58, 109 S.Ct. at 337, the Supreme Court stated that the due process clause does not impose on the police "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." The chief investigating officer testified that he could not really remember the bottle, but he would have collected it if he felt it had any significance. There is simply no basis in the record to conclude that law enforcement acted in bad faith by failing to collect the bottle.

[¶ 40] Moreover, we are unable to discern any prejudice as a result of the State's failure to collect the bottle. The bottle was presumably still at the residence, which was in the possession of Ms. Smith and/or Ms. Majors. Had Ms. Majors considered it crucial evidence, she could have collected it. In addition, the district court allowed the defense to question witnesses about the missing bottle and argue that the State failed to collect all potentially relevant evidence. Defense counsel took full advantage of that opportunity and it obviously did not sway the jury. The district court did not err by concluding that the State did not violate Ms. Majors' due process rights or denying her motion for sanctions.

## CONCLUSION

[¶ 41] The district court properly denied Ms. Majors' mistrial motion which was based on the fact that the trial bailiff was part of the investigating team and a witness at trial. There was no showing that Ms. Majors was denied a fair trial as a result of the bailiff's association with the prosecution team. The district court erred by admitting the hearsay recording of the conversation between the confidential informant and Ms. Smith into evidence at trial. That ruling was prejudicial with regard to the ecstasy possession charge and the conviction on that count is reversed. Finally, Ms. Major's due process rights were

not violated when the State failed to collect a blue bottle shown in photographs of the contents of the black bag; therefore, the district court properly denied her motion for sanctions against the State.

[¶ 42] Affirmed in part and reversed and remanded in part for further proceedings consistent with this decision.