# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 41

APRIL TERM, A.D. 2013

April 9, 2013

DOUGLAS HOWARD CRAFT,

Appellant
(Defendant),

v.

S-12-0107

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
The Honorable Michael N. Deegan, Judge

*Representing Appellant:*
    Diane Lozano, State Public Defender, PDP; Tina N. Olson, Chief Appellate Counsel; Kirk Morgan, Senior Assistant Appellate Counsel.   Argument by Mr. Morgan.

*Representing Appellee:*
    Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; James Michael Causey, Senior Assistant Attorney General; Christyne M. Martens, Assistant Attorney General.  Argument by Ms. Martens.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KITE, Chief Justice.**

[¶1]    Douglas Howard Craft was convicted of two counts of first degree sexual abuse of a minor  and one count of second degree sexual  abuse of a minor  upon his three daughters.  He appeals, claiming the prosecutor committed misconduct when  he questioned a witness about an exhibit that was not admitted as evidence, there was a fatal variance between the charges in the information and the charges proven at trial and the district court abused its discretion when it prohibited his expert witness from testifying about his opinion on what type of sexual abuse allegations were made in this case. Finding no error, we affirm.

## ISSUES

[¶2]    Mr. Craft presents the following issues on appeal:

> I.    Did prosecutorial misconduct occur when the prosecutor questioned witnesses on an exhibit he did not intend to submit into evidence?
>
> II.    Concerning two of the victims, PC and AXC, was there . . . a fatal variance between the charges alleged and the charges proven at trial?
>
> III.    Did the trial court abuse its discretion when it prohibited Mr. Craft's expert witness from providing an opinion as to which class the allegation of sexual abuse falls within?

The State presents essentially the same issues but phrased differently.

## FACTS

[¶3]    Mr. Craft is the father of three daughters, AXC, ALC and PC.  AXC and ALC are twins and were born in March 2001.  PC was born in February 2002, making her just eleven months younger than the twins.  Mr. Craft and the girls' mother were divorced, and in 2009 and 2010, he took the girls for weekend visitations at his home.

[¶4]    On August 24, 2010, AXC reported to her mother that Mr. Craft had put his penis in her bottom. The mother contacted law enforcement the next day, and a detective arranged for the girls to undergo forensic interviews.  During the forensic interviews, each girl separately stated that Mr. Craft had put his penis in her bottom.  A few days after the interviews, detectives questioned Mr. Craft and he confirmed that he cuddled with the girls in bed and he may have had an erection at the time.

1

[¶5] Mr. Craft was charged with three counts of first degree sexual abuse of a minor in violation of Wyo. Stat. Ann. § 6-2-314(a)(ii) (LexisNexis 2011),[1] one involving each girl. The information stated that the crimes occurred "[o]n or between March 2009 and March 2010." The matter went to trial and each of the victims testified. AXC and PC gave differing testimony as to when the abuse occurred. The video recordings of the victims' forensic interviews were also admitted into evidence and played for the jury.

[¶6] When ALC testified at trial, she could not identify Mr. Craft in the courtroom. Over defense counsel's objection, the district court allowed the State to show ALC a photograph, which she identified as being of her father. A detective later testified the photograph was of Mr. Craft and it was taken in August 2010.

[¶7] The defense called Dr. Terence Campbell, a forensic psychologist, as its expert witness. He testified that there are three types of sexual abuse allegations—confirmed, fabricated and false. Defense counsel asked Dr. Campbell which type of allegation was made in this case and the prosecutor objected, stating that such testimony would invade the province of the jury. The district court sustained the objection, but Dr. Campbell went on to testify at length about his opinions and the specific facts of the case.

[¶8] In his initial closing argument, the prosecutor did not refer to ALC's and the detective's identification of Mr. Craft in the photograph. However, after defense counsel reminded the jury that ALC could not identify Mr. Craft in the courtroom, the prosecutor stated in rebuttal that ALC had identified the subject in the photograph as her father and the detective confirmed the photo was of Mr. Craft.

[¶9] The jury found Mr. Craft guilty of first degree sexual abuse of a minor for the counts involving ALC and AXC and second degree sexual abuse of a minor for the count pertaining to PC.[2] After denying Mr. Craft's renewed motion for judgment of acquittal

---

[1] Section 6-2-314(a)(ii) states:

    (a) An actor commits the crime of sexual abuse of a minor in the first degree if:
    . . . .
       (ii) Being eighteen (18) years of age or older, the actor inflicts sexual intrusion on a victim who is less than eighteen (18) years of age, and the actor is the victim's legal guardian or an individual specified in W. S. 6-4-402[.]

Wyo. Stat. Ann. § 6-4-402 (LexisNexis 2011) defines the crime of incest and states that it may be committed by sexual intrusion or contact with a "descendent."

[2] The jury was instructed on the lesser included crime of second degree sexual abuse under Wyo. Stat. Ann. § 6-2-315(a)(iii) (LexisNexis 2011).

and motion for a new trial, the district court sentenced Mr. Craft to serve consecutive sentences of ten to fifty years on each first degree conviction and ten to twenty years on the second degree conviction. Mr. Craft appealed.

## DISCUSSION

### 1. Identification of Defendant Through Photograph

[¶10] Mr. Craft claims the prosecutor committed misconduct by having ALC and the detective identify him from a photograph that was not admitted into evidence and then commenting on it during closing arguments. In general, we review claims of prosecutorial misconduct for plain error if no objection was made at trial or for harmless error if an objection was lodged. *Butcher v. State,* 2005 WY 146, ¶ 38, 123 P.3d 543, 554 (Wyo. 2005). The State maintains, however, that this issue is not properly raised as prosecutorial misconduct because the prosecutor acted in accordance with the trial court's rulings.

[¶11] The trial was held in January 2012. When ALC was unable to identify Mr. Craft in the court room, the prosecutor asked to approach the bench and proposed to have her look at a photograph of the defendant which was taken around the time of his arrest. ALC had previously testified that she had not seen Mr. Craft at all during that school year and little during the previous year. Defense counsel objected on the grounds that the question had been "asked and answered" because ALC had already stated she could not identify her father in the court room and the photograph had not been listed as an exhibit by the State. The district court overruled the objection and the prosecutor asked ALC if she could identify the person in the photograph, which was marked as State Exhibit 4 but was not introduced into evidence at the trial or shown to the jury. ALC stated the man in the photograph was "[m]y dad." A detective testified later, over defense counsel's objection that the photograph was not listed as an exhibit or provided during discovery, that it was of Mr. Craft and was taken in August 2010. The defense did not object when the State referred to the photograph in its rebuttal closing argument.

[¶12] On appeal, Mr. Craft maintains the State's questioning of witnesses using the photograph and reference to it during closing argument amounted to prosecutorial misconduct. He cites to several cases he claims support the notion that it is improper for counsel to refer to exhibits not admitted into evidence—*United States v. Treadwell,* 594

---

  (a) Except under circumstance constituting sexual abuse of a minor in the first degree as defined by W.S. 6-2-314, an actor commits the crime of sexual abuse of a minor in the second degree if:

. . . .

  (iii) Being eighteen (18) years of age or older, the actor engages in sexual contact with a victim who is less than eighteen (18) years of age and the actor is the victim's legal guardian or an individual specified in W.S. 6-4-402[.]

F. Supp. 831 (D.D.C. 1984); *Mangan v. Broderick & Bascom Rope Co.,* 351 F.2d 24 (7th Cir. 1965); *Gorostieta v. Parkinson,* 17 P.3d 1110 (Utah 2009). In *Treadwell,* 594 F. Supp. at 836-41, the court ruled the inadvertent submission of exhibits to the jury which were not admitted into evidence at trial did not mandate a new trial. The court specifically distinguished other cases that involved direct violation of court rulings and prejudicial error. *Id. Mangan,* 351 F.2d at 28-31, was a civil case and involved an attorney's deliberate disobedience of the district court's directive to refrain from inquiring into certain evidence. *Gorostieta,* 17 P.3d at 1118, held that a party may not question a witness about exhibits which were expressly disallowed by the court. The cases cited by Mr. Craft indicate that the attorneys committed misconduct when they violated court orders.

[¶13] In *Butcher,* ¶ 43 n.8, 123 P.3d at 556 n.8, we provided the following definition of prosecutorial misconduct:

> *Black's Law Dictionary* 1237 (7th ed.1999) defines "prosecutorial misconduct" as "[a] prosecutor's improper or illegal act (or failure to act), esp. involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment."

In the case at bar, the prosecutor did not do anything which was not expressly approved by the district court. Therefore, he did not commit an improper or illegal act. If we were to accept Mr. Craft's argument, then any evidentiary error which favors the State would be considered prosecutorial misconduct. That is not accurate.

[¶14] Instead of prosecutorial misconduct, this issue raises the question of whether the district court erred by allowing the State to use the photograph as a means of identifying Mr. Craft when it was not listed as an exhibit or admitted into evidence. The district court has discretion to determine what, if any, sanctions are appropriate for failing to comply with discovery responsibilities or its pre-trial orders. *See* W.R.Cr.P. 16(d)(2); *Majors v. State,* 2011 WY 63, ¶ 35, 252 P.3d 435, 443-44 (Wyo. 2011). "A district court abuses its discretion if it could not have reasonably concluded as it did." *Id.,* ¶ 24, 252 P.3d at 441. "In this context, 'reasonably' means sound judgment exercised with regard to what is right under the circumstances and without being arbitrary or capricious.'" *Szymanski v. State,* 2007 WY 139, ¶ 15, 166 P.3d 879, 883 (Wyo. 2007). Even if the district court abused its discretion in granting or failing to impose sanctions, an appellant still must demonstrate prejudice to warrant reversal. *See Willoughby v. State,* 2011 WY 92, ¶ 26, 253 P.3d 157, 165 (Wyo. 2011).

[¶15] The record indicates the photograph was not listed as a potential exhibit by the State and was not addressed in the district court's memorandum of the pretrial conference. The district court obviously decided no sanction was required for the State's

4

failure to give notice of the photograph. Mr. Craft does not explain specifically how the district court abused its discretion by failing to sanction the prosecution for not listing the photograph as a potential exhibit. He also does not identify any rule of law which prohibits identification through the use of a photograph that is not entered into evidence.

[¶16] In addition, Mr. Craft was not prejudiced by the identification procedure because sufficient other evidence of Mr. Craft's identity as the perpetrator was presented at trial. Identification does not have to be proven by a witness positively identifying the accused in court; circumstantial evidence from which identity can be inferred is sufficient. *Coleman v. State,* 741 P.2d 99, 107 (Wyo. 1987); *Campbell v. State,* 589 P.2d 358, 368 (Wyo. 1979). *See also, McCarty v. State,* 616 P.2d 782, 785 (Wyo. 1980). Here, ALC testified that her father sexually abused her, and her mother testified that Mr. Craft was ALC's father. This evidence was sufficient to identify Mr. Craft as the perpetrator of the crime.

[¶17] *Fowler v. Tucker,* 2012 WL 5519743 (N.D.Fla. Sept. 28, 2012) (U.S. magistrate judge's report and recommendation adopted by district court at 2012 WL 5519741 (N.D. Fla. Nov. 14, 2012)), a habeas corpus action decided by the United States district court for the northern district of Florida, demonstrates how circumstantial evidence can be used to identify a defendant. *Fowler* also involved allegations of child sexual abuse. The victim testified at trial that "Earl" assaulted her. Like ALC, the victim was unable to identify the defendant in court as her assailant. The court ruled that "a witness's ability to point the defendant out in court is not a necessary component of the case." Instead, the identity of the perpetrator may be "inferred from circumstantial evidence, and the lack of direct, in-court identification, goes to the strength of the case." *Id.* at 20. The court found the evidence of the identification of the defendant as the perpetrator was sufficient because the victim stated that "Earl" assaulted her, the defendant was known by the name "Earl," and the defendant lived with the victim and her mother and had access to her at the time of the incident. *Id.* at 21.

### 2. *Variance/Sufficiency of the Evidence*

[¶18] Mr. Craft contends there was an unconstitutional variance between the charges in the information and the charges proven at trial with regard to the dates of the abuse of AXC and PC. Mr. Craft's argument raises the constitutional issue of a fatal variance and questions the sufficiency of the evidence with regard to those counts. As a result, we must apply both standards of review. Our standard of review on the variance issue is *de novo* because it implicates constitutional notice requirements. *Dawes v. State,* 2010 WY 113, ¶ 17, 236 P.3d 303, 307 (Wyo. 2010). Reviewing a claim that the trial evidence was insufficient to support a conviction,

> we examine and accept as true the State's evidence and all
> reasonable inferences which can be drawn from it. We do not

5

consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.

*Anderson v. State,* 2009 WY 119, ¶ 6, 216 P.3d 1143, 1145 (Wyo.2009), quoting *Martin v. State,* 2007 WY 2, ¶ 32, 149 P.3d 707, 715 (Wyo.2007).

*Id.*

[¶19] In determining whether an unconstitutional or fatal variance occurred, we consider two distinct questions. The first is whether there was a variance. "[A] variance occurs when the evidence presented at trial proves facts different from those alleged in the information or indictment." *Spagner v. State,* 2009 WY 12, ¶ 15, 200 P.3d 793, 800 (Wyo. 2009). If there was a variance, we move to the second question—whether it was fatal and, consequently, reversal is required. A variance is not fatal "unless the appellant could not have anticipated from the indictment or information what evidence would be admitted at trial, or the conviction would not bar subsequent prosecution." *Id.*

[¶20] We explained the variance concepts in another way in *Weidt v. State,* 2002 WY 74, ¶ 9, 46 P.3d 846, 851 (Wyo. 2002) (citations omitted):

> [A] variance is fatal where the instruction submits a new and distinct offense to the jury. Instructing on one form of the offense where the information charges another form of the same offense is not reversible error absent a showing that the variance between the information and the instruction is material and prejudicial. Variances are material where they affect whether the defendant received adequate notice of the charges against him. Variances are prejudicial where they affect the defendant's ability to defend the charge against him.

[¶21] The information charged Mr. Craft with three counts, one for each girl. The charges pertaining to AXC and PC stated:

> **COMES NOW** the State of Wyoming . . . and hereby informs the Court and gives the Court to understand that [Mr. Craft],

6

## COUNT I

On or between March 2009 and March 2010, in Campbell County, Wyoming, did inflict sexual intrusion on a minor being eighteen (18) years of age or older, the victim being less than eighteen (18) years of age, and the actor was the victim's legal guardian or an individual specified in W.S. 6-4-402 [incest statute], to wit: AXC . . . in violation of Wyoming Statute § 6-2-314(a)(ii), a felony punishable under § 6-2-314(b) and § 6-10-102, by imprisonment for not more than fifty (50) years, a fine of not more than $10,000, or both,
. . . .

## COUNT III

On or between March 2009 and March 2010, in Campbell County, Wyoming, did inflict sexual intrusion on a minor being eighteen (18) years of age or older, the victim being less than eighteen (18) years of age, and the actor was the victim's legal guardian or an individual specified in W.S. 6-4-402, to wit: PC . . . in violation of Wyoming Statute § 6-2-314(a)(ii), a felony punishable under § 6-2-314(b) and § 6-10-102, by imprisonment for not more than fifty (50) years, a fine of not more than $10,000, or both[.]

[¶22] The jury instructions given at trial stated in pertinent part:

### Instruction No. 14

The necessary elements of the crime of Sexual Abuse of a Minor in the First Degree, as charged in Count I of this case, are:

1. Between March 2009 and March 2010;
2. In Campbell County, Wyoming;
3. The Defendant, Douglas Howard Craft;
4. Inflicted sexual intrusion upon [AXC];
5. [AXC] was under the age of eighteen (18);
6. Douglas Howard Craft was [AXC's] legal guardian; and
7. Douglas Howard Craft was at least eighteen (18) years of age.
. . . .

### Instruction No. 16

7

The necessary elements of the crime of Sexual Abuse of a Minor in the First Degree, as charged in Count III of this case, are:

1. Between March 2009 and March 2010;
2. In Campbell County, Wyoming;
3. The Defendant, Douglas Howard Craft;
4. Inflicted sexual intrusion upon [PC];
5. [PC] was under the age of eighteen (18);
6. Douglas Howard Craft was [PC's] legal guardian; and
7. Douglas Howard Craft was at least eighteen (18) years of age.

The same elements were also provided to the jury earlier in the trial proceedings in Instruction No. 1.

[¶23] The information and jury instructions were virtually identical as they contained all of the same elements and the same dates. As such, there was no variance. Mr. Craft claims, however, that AXC's and PC's testimony did not establish the crimes occurred during the charged time frame. This argument questions the sufficiency of the evidence.

[¶24] In advancing his argument, Mr. Craft focuses on PC's statement that she talked to her sisters about the abuse immediately after it happened and then told her mother as soon as they returned home. Mr. Craft also points to AXC's statement that she talked to her sisters after she was abused and they told their mom a day later. The mother testified that she reported the incident to the police the day after learning of it. The detective testified that the mother made her report on August 25, 2010. Thus, Mr. Craft maintains the evidence established the abuse took place in August 2010, which was outside the charged period of March 2009 through March 2010. Mr. Craft's argument correctly recounts part of the evidence presented at trial; however, he does not apply the proper standard for reviewing the sufficiency of the evidence to support a criminal conviction which requires us to accept as true the State's evidence and give it all reasonable inferences. *See Dawes,* ¶ 17, 236 P.3d at 307.

[¶25] There is no doubt there were inconsistencies in AXC's and PC's testimony regarding the time of the abuse. As we have recognized before, such inconsistencies are not uncommon or unexpected for young victims of abuse. In *Spagner,* ¶ 17, 200 P.3d at 800-01, we remarked that "any reasonable defendant and his counsel would have anticipated that a [young] victim of repeated sexual abuse might not give a verbatim recital of her earlier reports of the crimes." Considering the evidence in the light most favorable to the State, we conclude the evidence was sufficient to support the convictions.

[¶26] AXC's birthday is in March and PC's birthday is in February. At the time of the trial in January 2012, PC was nine years old and in the fourth grade and AXC was ten

8

years old and in the fifth grade. During the period specified in the information (March 2009 through March 2010), PC would have been seven or eight years old and in the first or second grade. AXC could have been seven, eight or nine years old because of her March birthday and in the second or third grade. AXS and PC both testified that when the abuse occurred the girls lived with their mother in the Gillette Apartments. The mother testified that they had lived in the Gillette Apartments for four years before moving in with her parents in July 2011.

[¶27] AXC seemed confused about the time of the abuse when she testified at trial. She thought she was ten years old when the abuse occurred but also confirmed that she was currently ten years old. She then stated that she could not remember how long ago the abuse occurred. During the forensic interview, she stated that she had just turned nine years old when the abuse occurred and it had happened in the spring.[3] PC told the forensic interviewer she thought she was seven or eight years old when her father abused her. AXC and ALC stated at the forensic interview that their father would abuse one girl and then have her send another one into his bedroom. ALC testified at trial the last time she was abused was a "couple of years ago" and she was in the third grade. This evidence, if believed by the jury, was sufficient to support a conclusion that Mr. Craft abused AXC and PC during the charged time period.

### 3. Expert Witness Testimony

[¶28] Mr. Craft maintains the district court erred when it refused to allow Dr. Campbell to testify about the type of sexual abuse allegations in this case. We review the district court's decision as to the admissibility of evidence for abuse of discretion. *Szymanski,* ¶ 15, 166 P.3d at 883. A district court abuses its discretion if it could not have reasonably reached the conclusion it did. *Id.*

[¶29] Dr. Campbell testified there are three types or varieties of sexual abuse allegations—confirmed, fabricated and false. He explained that "confirmed" allegations involve "a situation where there is a well defined chain of evidence conclusively demonstrating that the child or the children in question was sexually abused." Dr. Campbell defined "fabricated" allegations as "circumstances where someone sets out with premeditated malice to lead a child into false allegations of sexual abuse." "False" allegations occur when no abuse has occurred and there is no "premeditated malice to concoct fabricated allegations," but premature conclusions and rumor formation and dissemination lead to such allegations. His direct testimony then continued as follows:

---

[3] The district court instructed the jury as follows: "If you find that any statements made by any alleged victim in her forensic interview are inconsistent with the testimony said alleged victim gave in open court, then you may only consider such prior inconsistent statement for purposes of impeaching the testimony of the alleged victim." This ruling is not challenged on appeal.

9

Q. Based on your interpretation of the materials reviewed and the evidence presented in court, what is your opinion of the type of sexual abuse we're dealing with today?

[Prosecutor]: I would object, Your Honor. I think this invades the province of the jury.

THE COURT: Do you want to respond to that?

[Defense Counsel]: Your Honor, a witness can testify to their interpretation of the evidence. They cannot, you know, make an ultimate conclusion of that evidence, but they can still testify as to an interpretation of the evidence, even if it sort of dances around an ultimate conclusion. So long as Dr. Campbell doesn't say that this particular happened, he can most definitely testify to his interpretation of the evidence.

[Prosecutor]: Your Honor, he just identified two ways that this didn't happen and one way it actually did happen. The translation of that is going to that in his opinion either the defendant is guilty or he's not guilty. That goes to the ultimate issue this jury is supposed to decided, and that is inappropriate expert testimony.

THE COURT: Objection sustained.

[¶30] The State maintains Mr. Craft waived his right to contest the district court's ruling on appeal because he failed to make an offer of proof. W.R.E. 103 states in relevant part:

**(a)** *Effect of Erroneous Ruling.* – Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
. . . .
(2) Offer of Proof. – In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

We explained the offer of proof requirement in *Bloomfield v. State,* 2010 WY 97, ¶ 23, 234 P.3d 366, 375 (Wyo. 2010) (citation omitted):

[T]here is only one prudent way for an offer of proof to be made at trial. The attorney who seeks to offer evidence,

which has been refused or to which an objection has been upheld, should take the initiative. The offer of proof should then take the form of counsel's eliciting the proposed testimony directly from the witness, or entering the tangible evidence in the record, all outside of the hearing of the jury.

When an appellant has failed to make an offer of proof, it "must result in a waiver of his ability to attribute error to the district court." *Silva v. State,* 2012 WY 37, ¶ 21, 271 P.3d 443, 450 (Wyo. 2012). Because Mr. Craft failed to make an offer of proof, we could wholly reject his claim on the basis of waiver. Nevertheless, even if we assume from the context of Dr. Campbell's testimony that he was going to testify that the girls' allegations were false or fabricated, we would also reject his claim that the district court abused its discretion because such testimony is inadmissible.

[¶31] Mr. Craft argues Dr. Campbell's opinion testimony was admissible under W.R.E. 702 and 704. W.R.E. 702 reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

W.R.E. 704 states: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, we have repeatedly stated that these evidentiary rules do not allow any witness, whether lay or expert, to express an opinion as to the accused's guilt or the credibility of another witness. *See, e.g., Cureton v. State,* 2007 WY 168, ¶ 10, 169 P.3d 549, 551 (Wyo. 2007); *Carter v. State,* 2012 WY 109, ¶ 11, 282 P.3d 167, 170 (Wyo. 2012); *Hannon v. State,* 2004 WY 8, ¶ 88, 84 P.3d 320, 353 (Wyo. 2004).

[¶32] Mr. Craft contends that admission of Dr. Campbell's testimony was warranted by our decision in *Cureton.* Cureton was charged with various drug related offenses and one of the investigating officers testified as an expert witness about the common characteristics of methamphetamine use and trafficking. Cureton claimed reversible error occurred when the officer testified that certain facts in her case indicated drugs were being sold rather than simply used. *Cureton,* ¶¶ 8-9, 169 P.3d at 551. We held the testimony was permissible because the officer did not testify or offer any conclusion about whether Cureton was a drug dealer or guilty of any particular offense. *Id.,* ¶ 11, 169 P.3d at 551-52.

[¶33] It is true that Dr. Campbell's testimony was not a direct comment on Mr. Craft's guilt or innocence. However, the question posed by defense counsel eliciting Dr.

Campbell's opinion about what type of sexual abuse allegation was made in this case, i.e., confirmed, false or fabricated, went straight to the credibility of the victims. The question specifically requested an opinion on whether the victims had made false or fabricated allegations. There is simply no question that Dr. Campbell's answer would have been a direct comment on whether the victims were telling the truth or not. Mr. Craft's situation is, therefore, clearly distinguishable from *Cureton*.

[¶34]  In many respects, Dr. Campbell's proposed testimony was similar to the testimony we criticized in *Whiteplume v. State,* 841 P.2d 1332, 1337-41 (Wyo. 1992). In that case, the officer testified that he listened to the victim's story and "made a determination that she had been raped." We ruled that the officer's statement constituted an improper opinion on the credibility of the victim and guilt of the accused. Likewise, Dr. Campbell's proposed testimony clearly fell outside the range of permissible opinion testimony and the district court did not abuse its discretion by excluding it.

[¶35]  Affirmed.